UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH TURNER and JONNIE WHICKER,<br>    Plaintiffs,<br><br>vs.<br><br>ROCKWELL AUTOMATION PENSION PLAN and ROCKWELL AUTOMATION PENSION PLAN SUB-PLAN FOR BARGAINING UNIT EMPLOYEES OF THE MADISON, INDIANA PLANT,<br>    Defendants. | 1:09-cv-0046-LJM-TAB |

## **ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on defendants', Rockwell Automation Pension Plan and Rockwell Automation Pension Plan Sub-Plan for Bargaining Unit Employees of the Madison, Indiana Plant (collectively, the "Defendants"), Motion for Summary Judgment and plaintiffs', Kenneth Turner ("Turner") and Jonnie Whicker ("Whicker") (collectively, the "Plaintiffs"), Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").[1]  Plaintiffs filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, alleging that Defendants wrongfully denied their claims for permanent disability pension benefits and failed to provide information relevant to their claims in a timely manner.  Both parties moved for summary judgment on two issues: (1) whether the Defendants' interpretation of the documents governing the Plaintiffs' claims (the "Plan" and the "Sub-Plan") was reasonable, and (2) whether Plaintiffs sued the proper

---

[1] Plaintiffs' Motion for Oral Argument is also before the Court.  Dkt. No. 48.  After examining the briefs and designated evidence, the Court concludes that oral argument is unnecessary.  Therefore, Plaintiffs' Motion for Oral Argument is **DENIED**.

party for failing to provide relevant information regarding the Plaintiffs' claims in a timely manner. 29 U.S.C. § 1024(b)(4).[2] The Court has considered the parties' arguments and rules as follows.

## I. BACKGROUND

### A. THE DENIALS OF PLAINTIFFS' CLAIMS

Plaintiffs are participants in the Plan and the Sub-Plan, whose employments were terminated on January 31, 2007. Compl. ¶ 18; Answer ¶¶ 11, 16; Dkt. No. 45-3 at 45. After January 31, 2007, Plaintiffs applied for Social Security Administration ("SSA") disability income benefits. The SSA determined that Plaintiffs were entitled to disability income benefits as of December 2007. Dkt. No. 45-2 at 72; Dkt. No. 45-3 at 41. However, neither of the letters informing Plaintiffs' of their SSA disability awards specified the dates that their respective disabilities commenced. *Id.* After December 15, 2007, Plaintiffs applied for permanent disability pension benefits pursuant to the Plan and Sub-Plan. Under the Plan and Sub-Plan, participants who qualify for permanent disability pension benefits are entitled to a monthly pension equal to their normal retirement pension as if they had

---

[2] Plaintiffs also moved for summary judgment on a claim that they did not allege in their Complaint, namely, that the Defendants violated 29 U.S.C. § 1133 and other applicable regulations by not processing their claims in accordance with ERISA's statutory and regulatory requirements. *See Haplin v. W.W. Grainger*, 962 F.2d 685, 688-89 (7th Cir. 1992) ("ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded the opportunity for full and fair review by the administrator.") (internal quotation marks omitted). In short, only substantial compliance with these regulations is required, *id.*, and Plaintiffs fail to demonstrate how the Defendants' inconsistent justifications for denying their claims deprived them of the opportunity for full and fair review of the Defendants' ultimate decision. Accordingly, the Court concludes that Plaintiffs waived this argument.

reach their normal retirement age but based on their years of service at the time of such retirement. Dkt. No. 45-1 at 87.

On December 26, 2007, Defendants denied Turner's application for disability pension benefits because he "w[as] not absent on leave for twenty-six (26) weeks out of the last 52 weeks of [his] employment[.]" Dkt. No. 45-2 at 80. Turner appealed and on February 11, 2008, Defendants' denied Turner's application for disability pension benefits because, according to Defendants, Turner "did not become disabled while in the service of the company." Dkt. No. 45-2 at 83. On March 26, 2008, Defendants denied Turner's second appeal. The final reason that the Defendants gave for denying Turner's request for permanent disability pension benefits was that he was not disabled as of the date that his employment were terminated. Dkt. No. 45-3 at 71.

Similarly, on February 29, 2008, Defendants denied Whicker's application for disability pension benefits because his "leave of absence prior to termination was less than [twenty-six (26)] weeks." Dkt. No. 45-3 at 38. Whicker appealed and on March 26, 2008, Defendants ultimately denied Whicker's application for permanent disability pension benefits. Dkt. No. 45-3 at 72. The final reason that the Defendants gave for denying Whicker's request was that, according to Defendants, he was not disabled as of the date that his employment was terminated. *Id.*

The Plan provides a definition of "disability" that applies to participants' claims "[e]xcept as otherwise provided in an Applicable Sub-Plan . . . ." Dkt. No. 44-3 at 15. The Plan states, in relevant part:

> [A] Participant shall be deemed to be Disabled when, on the basis of proof satisfactory to the Plan Administrator . . . submitted to the Plan Administrator . . . within one year of the Participant's termination of employment, such Plan

3

> Administrator . . . finds that he is wholly and permanently [disabled] . . . . The Plan Administrator . . . shall accept as conclusive proof of Disability a determination made by the [SSA] that a Participant is disabled . . . .

Dkt. No. 44-3 at 15.  The applicable Sub-Plan language is as follows:

> 3.4   <u>Permanent Disability Pension</u>.
>
> (a)   A Member shall be entitled to receive a permanent disability pension upon retirement from employment with all the Employers prior to his Normal Retirement Date because of a total and permanent disability which commences prior to his termination of employment (effective on and after December 15, 1997, the Member must be entitled to a Social Security Disability award which is effective to date no later than one (1) year after the Member's termination from employment with all the Employers) . . .
>
> (b)   <u>Definition of Total and Permanent Disability</u>.
>
> (i)   A Member shall be deemed to be totally and permanently disabled for the purpose of the Plan only if the [SSA] determines that he is, or will be at the appropriate time, eligible to receive benefits on account of his disability . . .
>
> (d)   <u>Benefit Commencement</u>.
>
> (i)   Such total and permanent disability shall be deemed to have commenced for the purposes of this Section 3.4 at the same time as his disability was determined to have commenced for the purposes of such Federal Social Security Act . . . .

Dkt. No. 44-2 at 13-15.

4

### B. PLAINTIFFS' REQUESTS FOR DOCUMENTS

On March 31, 2008, Turner sent a letter to Paula Swafford ("Swafford"), Chairperson of Rockwell's Employee Benefits Appeals Committee, seeking "a copy of all the records and[/]or reports that are relevant to [Turner's] claim." Dkt. No. 45-3 at 46. Swafford is not and never has been the administrator for the Plan and Sub-Plan. Swafford Aff. ¶ 9. At all relevant times, Teresa Carpenter ("Carpenter") was the administrator for the Plan and Sub-Plan. *Id.*; Carpenter Aff. ¶ 4. In any event, on June 4, 2008, Swafford sent Turner the Plan and Sub-Plan. Swafford Aff. ¶ 15; Compl. Ex. 6.

Similarly, on May 28, 2008, Whicker, through counsel, requested a copy of the documents and information relevant to his claim for permanent disability pension from Swafford. Dkt. No. 45-3 at 74. On June 4, 2008, Swafford sent Whicker the documents governing the Plan and Sub-Plan. Swafford Aff. ¶ 17 & Ex. G.

The Court adds additional facts as needed below.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56(c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

>issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See*

*Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. **DISCUSSION**
#### A. THE DENIALS OF PLAINTIFFS' CLAIMS

Defendants argue that when correctly interpreted, the Plan and Sub-Plan require any permanent disability pension benefits participant to both: (1) demonstrate entitlement to a Social Security Disability award, which is effective to date no later than one year after the participant's termination (the "One-Year Requirement");[3] and (2) prove that the SSA deemed the participant's disability to have commenced prior to the date that the participant's employment was terminated (the "Deemed Commenced Requirement").[4]

---

[3] The parties share the same interpretation of the One-Year Requirement. Specifically, Defendants assert that "whether the [O]ne-[Y]ear [Requirement] is satisfied depends on the date the participant begins receiving his award." Defs.' Resp. Br. at 2. Plaintiffs assert that "a notice of award from the SSA . . . must come from the SSA within one year of the plan participant's termination of employment." Pls.' Br. in Supp. of Mot. for Summ. J. at 17.

[4] For purposes of their interpretation, Defendants assert that the date the SSA deems a participant's disability to have commenced is what is referred to in the regulations governing social security benefits as the "onset date of disability." SSR 83-20; Defs.' Resp. Br. at 2. Plaintiffs have not challenged the Defendants' interpretation of what the Deemed Commenced Requirement actually requires. In this case, the only designated evidence regarding the Plaintiffs' disabilities is their letters from the SSA, which informed Plaintiffs' that they were entitled to monthly benefits "beginning

7

When, as in this case, the administrator for the employee benefits plan has the sole discretion to interpret and apply the plan, the Court reviews the administrator's interpretation for arbitrariness and caprice. *Marrs v. Motorola, Inc.*, 577 F.3d 783, 786 (7th Cir. 2009); Dkt. No. 44-3 at 54-55. Accordingly, "the administrator's decision will only be overturned if it is . . . unreasonable." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (internal quotation marks omitted). The administrator, of course, "is not by virtue of such a grant of authority free to disregard unambiguous language in the plan[.]" *Marrs*, 577 F.3d at 786.

The plain language of the Sub-Plan entitles a participant to receive disability pension benefits "because of a total and permanent disability which commences prior to his termination of employment[.]"[5] Dkt. No. 44-2 at 13. Immediately following this language, a parenthetical amendment was added on December 15, 1997. *Id.* The amendment states: "[E]ffective on and after December 15, 1997, the Member must be entitled to a Social Security Disability award which is effective to a date no later than one (1) year after the Member's termination from employment[.]" *Id.* at 13-14. In essence, the Plaintiffs argue

---

December 2007." Dkt. No. 45-2 at 72; Dkt. No. 45-3 at 41. The Plaintiffs have not designated any evidence regarding their onset dates of disability. *See* SSR 83-20 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.").

[5] Contrary to Plaintiffs' suggestion, this language does not conflict with the terms of the Plan. See Dkt. No. 45-1 at 11 ("In the event of a conflict between a provision of the Plan and a provision of a Sub-Plan, the Plan shall be controlling unless the Sub-Plan expressly provides that the provision of the Sub-Plan shall be controlling with respect to a particular issue."). Rather, it adds an additional term. Plaintiffs have not designated language from the Plan that would purport to restrict the Sub-Plan from adding additional terms to the Plan. In fact, the Plan appears to contemplate just the opposite. *See* Dkt. No. 44-3 at 15 ("Except as otherwise provided in an Applicable Sub-Plan, . . . .").

that the only reasonable interpretation of this parenthetical amendment to the Sub-Plan is that it replaces the Deemed Commenced Requirement. Plaintiffs do not cite any rule of contract construction in support of their assertion that the parenthetical amendment replaces the preceding language. Rather, Plaintiffs assert that it is unreasonable to interpret the Sub-Plan to require a participant to prove that his onset date of disability, for purposes of the SSA, was prior to the date that his employment was terminated.

In support of Plaintiffs' proffered interpretation, they assert that it is "impossible" for the SSA to determine that a claimant was disabled while he or she was still employed. Pls.' Resp. Br. at 9. This assertion, while true in some cases, is not a hard-line rule. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if[] he is in fact working."). If Plaintiffs were working and the work they performed was determined by the SSA decisionmaker to be "substantial gainful activity[,]" 20 C.F.R. § 404.1520(b), then Plaintiffs could not establish that their disabilities "commenced for the purposes of [the] Federal Social Security Act[,]" Dkt. No. 44-2 at 15, on a date "prior to [their] termination of employment." *Id.* at 13. However, under the regulations governing social security benefits, the decisionmaker could find that the Plaintiffs were not engaged in "substantial gainful activity" even though their respective employments had not yet been terminated. *See Stark v. Weinberger*, 497 F.2d 1092, 1100 (7th Cir. 1974) ("Unquestionably the regulations provide a basis for concluding that [a claimant's] employment during the period in which she claims to have been disabled is disqualifying[, b]ut . . . post-disability employment is not necessarily disqualifying in every case."); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir.

1998) (same); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995) (same); *Jones v. Shalala*, 21 F.3d 191, 192-93 (7th Cir. 1994) (same).

For instance, in determining whether a social security claimant is able to perform "substantial gainful activity," if the claimant's earnings exceed the reasonable value of the work he performs, the SSA only considers the "true value" of the claimant's work as compared to similar work done by unimpaired persons. 20 C.F.R. § 404.1574(a)(2). In other words, if the Defendants kept the Plaintiffs on their payroll despite the Plaintiffs' inability to actually perform the tasks that make up their employment, the SSA could still have determined that the Plaintiffs were disabled before the Defendants terminated Plaintiffs' employments. *Id.* Accordingly, Plaintiffs' argument that it is impossible for a participant to meet both requirements under the Defendants' proffered interpretation of the Sub-Plan is without merit.

The Plaintiffs also argue that because Defendants both fund the benefits and review participants' claims for benefits, the Defendants are operating under a conflict of interest that the Court should consider in its inquiry into the reasonableness of Defendants' interpretation of the Plan and Sub-Plan. However, the Plaintiffs have failed to present any evidence that raises a genuine issue of material fact with regard to the likelihood that Defendants' inherent conflict of interest influenced their decision to deny Plaintiffs' benefits. *See Marrs*, 577 F.3d at 788-89. Under *Marrs*, it is not enough for plan participants to merely point out the conflict of interest that always exists when, under the benefits plan, the plan administrator has absolute discretion to interpret the plan in a fashion that denies benefits to plan participants. Rather, plan participants must utilize the discovery process to explore the "gravity of the conflict." *See Gessling v. Group Long Term Disability Plan for*

*Employees of Sprint*, No. 1-07-cv-0483-DFH-DML, 2010 WL 933983, at *12 (Mar. 16, 2010); *see also Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009) ("*Marrs* takes the position that . . . the likelihood that the conflict influenced the plan administrator's decision[] should be inferred from the circumstances of the case, including the reasonableness of the procedures by which the plan administrator decided the claim, any safeguards the plan administrator has erected to minimize the conflict of interest, and the terms of employment of the plan administrator's staff that decides benefit claims."). This the Plaintiffs failed to do.

In summary, the Defendants' interpretation is supported by the plain language of the Sub-Plan. The Defendants' interpretation does not create impossible criteria for participants to meet in order to qualify for permanent disability pension benefits, and the Defendants' interpretation of the Sub-Plan does not conflict with any provision of the Plan. Lastly, the Plaintiffs' have failed to raise an issue of fact regarding the likelihood that Defendants' inherent conflict of interest influenced their decision to deny Plaintiffs' benefits. For all these reasons, the Court concludes that the Defendants' interpretation of the Plan and Sub-Plan was reasonable as a matter of law.

### B. PLAINTIFFS' REQUESTS FOR DOCUMENTS

Defendants argue that Plaintiffs' claims for statutory penalties pursuant to 29 U.S.C. § 1132(c) fail because the Plaintiffs failed to sue the proper party, namely the administrator of the Plan and Sub-Plan. Liability under 29 U.S.C. § 1132(c)(1) is confined to the plan administrator and, consequently, other parties cannot be held liable for the failure to supply plan participants with the plan documents they seek. *Mondry v. Am. Family Mut. Ins. Co.*,

557 F.3d 781, 794 (7th Cir. 2009).  Pursuant to 29 U.S.C. § 1002(16)(A)(i), the "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ."  A plan may "specifically designate" a plan administrator:

> (1) By name,
>
> (2) By reference to the person or group of persons holding a named position or positions,
>
> (3) By reference to a procedure established under the terms of the instrument pursuant to which a plan administrator is designated, or
>
> (4) By reference to the person or group of persons charged with specific responsibilities of plan administrator. . . .

26 C.F.R. § 1.414(g)-1(a)(1-4).

The Plaintiffs point out that while the Plan and Sub-Plan designate an administrator, neither document specifies the name of that person or an address at which to contact him or her.  Dkt. No. 44-3 at 24, 54.  However, the Plaintiffs fail to direct the Court to any authority that requires the Defendants to provide this information in the Plan or Sub-Plan. There is no question that the Defendants' method for designating the administrator of the Plan and Sub-Plan comports with 26 C.F.R. § 1.414(g)-1(a)(3).  In addition, nothing prevented the Plaintiffs from moving to amend their complaint after Carpenter's identity was disclosed and they had an opportunity to further inquire as to her relevance in this litigation. *See* Dkt. No. 52-4 (Defs.' Initial Disclosures).  Furthermore, the Defendants did not, as Plaintiffs suggest, become *de facto* plan administrators merely by responding to Plaintiffs' document requests.  *See Jones v. UOP*, 16 F.3d 141, 144-45 (7th Cir. 1994) (holding that plan participant was not entitled to statutory penalties where plan's legal department

responded to participant's requests, but did not tell the participant to deal with them rather than the designated plan administrator). Accordingly, the Court concludes that Defendants cannot, as a matter of law, be held liable for violating 29 U.S.C. § 1024(b)(4).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants', Rockwell Automation Pension Plan and Rockwell Automation Pension Plan Sub-Plan for Bargaining Unit Employees of the Madison, Indiana Plant, Motion for Summary Judgment and **DENIES** plaintiffs', Kenneth Turner and Jonnie Whicker, Motion for Summary Judgment on all of plaintiffs' claims. Judgment shall enter accordingly.

IT IS SO ORDERED this 18th day of May, 2010.

```
                                    _____
                                    LARRY J. McKINNEY, JUDGE
                                    United States District Court
                                    Southern District of Indiana
```

Distribution to:

Gary J. Dankert
ICE MILLER LLP
gary.dankert@icemiller.com

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com

Brian J. Paul
ICE MILLER LLP
brian.paul@icemiller.com

Amanda Lynn Yonally
O'RYAN LAW FIRM
ayonally@oryanlawfirm.com